**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **Jacqueline Hanna** | : | |
| 3584 Fishinger Mill Road | : | |
| Hilliard, Ohio 43026 | : | |
| | : | |
| Plaintiff, | : | Case No. 2:25-CV-244 |
| | : | |
| v. | : | Judge |
| | : | |
| **OhioHealth Corporation** | : | Magistrate Judge |
| d/b/a Riverside Methodist Hospital | : | |
| 3430 OhioHealth Parkway | : | |
| Columbus, Ohio 43202 | : | |
| | : | |
| Defendant. | : | |

## <u>COMPLAINT</u>
### (Jury Demand Endorsed Hereon)

Plaintiff Jacqueline Hanna ("Plaintiff"), by and through undersigned Counsel, brings the following Complaint alleging violations of the Americans with Disabilities Act ("ADA"), as amended, 42 U.S.C. § 12101, *et seq.*, and Ohio's antidiscrimination laws, R.C. Chapter 4112, against Defendant OhioHealth d/b/a Riverside Methodist Hospital ("Defendant").

### JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction over Counts I and III pursuant to 28 U.S.C. §§ 1331 (federal question) and 1343 (civil rights) because the claim is set forth pursuant to the Civil Rights laws of the United States of America.

2. The Court has supplemental jurisdiction over Counts II and IV, Plaintiff's state law claims, pursuant to 28 U.S.C. § 1367, because the claims arise out of the same set of operative facts to make the claim part of the same case or controversy.

1

3. Venue is proper pursuant to 28 U.S.C. § 1391 and S.D. Ohio Civ. R. 82.1 because a substantial part of the events giving rise to the causes of action occurred in Franklin County, Ohio, within the Southern District of Ohio, Eastern Division where Defendant is headquartered.

**PARTIES**

4. Plaintiff is a natural person who is a resident and citizen of the State of Ohio.

5. At all relevant times, Plaintiff had a disability, specifically Plaintiff is Deaf, as that term is defined by the ADA, 42 U.S.C. § 12102(1)(A), and Ohio's antidiscrimination law, R.C. 4112.01(A)(13), and/or Plaintiff has a record of a disability as defined by the ADA, 42 U.S.C. § 12102(1)(B), and Ohio's antidiscrimination law, R.C. 4112.01(A)(13), and/or Plaintiff was regarded as having a disability as defined by the ADA, 42 U.S.C. § 12102(1)(C), and Ohio's antidiscrimination law, R.C. 4112.01(A)(13). Plaintiff's disability substantially interferes with the major life activity of hearing as defined in the ADA, 42 U.S.C. § 12102(2)(A), and Ohio's antidiscrimination law, R.C. 4112.01(A)(13). Plaintiff's primary language is American Sign Language ("ASL").

6. Plaintiff dual filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Ohio Civil Rights Commission ("OCRC"), Charge No. COLB1(002932)11022023; 22A-2024-02294, within 300 days of Defendant discriminating against Plaintiff because of her disability. The OCRC issued Plaintiff a Notice of Right to Sue dated October 3, 2024, attached hereto as Exhibit 1. This Complaint is filed within two years of Defendant discriminating against Plaintiff, minus the time the Charge of Discrimination was pending in the OCRC. The EEOC issued a Notice of Right

to Sue dated December 13, 2024, attached hereto as Exhibit 2. This Complaint is filed within 90 days of receipt of the EEOC's Notice of Right to Sue.

7. Defendant is a not-for-profit, faith-based hospital located in Columbus, Ohio. Defendant is an employer as that term is defined pursuant to the ADA, 42 U.S.C. § 12111(5)(A), and Ohio's antidiscrimination law, R.C. 4112.01(A)(2).

### FACTUAL ALLEGATIONS

8. During or about May 2022, Julie Johnson, Administrative Manager, contacted Plaintiff about a Medical Authorization Coordinator position.

9. Ms. Johnson, Nancy Buehler, Clinical Nurse Manager, Brittany Thompson, Medical Authorization Coordinator, and Nurse Coordinators interviewed Plaintiff for the Medical Authorization Coordinator position.

10. Despite being deaf, Defendant interviewed Plaintiff for the Medical Authorization Coordinator position without the accommodation of an ASL interpreter.

11. During the interview, Plaintiff informed Ms. Johnson, Ms. Buehler, Ms. Thompson, and the Nurse Coordinators that she was Deaf. Plaintiff requested that the interviewers speak one person at a time for clarity in communication in order for Plaintiff to compensate for her inability to hear as she was without the assistance of the accommodation of an ASL interpreter.

12. Ms. Johnson offered Plaintiff the Medical Authorization Coordinator position, which Plaintiff accepted.

13. On or about July 8, 2022, Defendant required Plaintiff to attend the OhioHealth David M. Blom Administrative Campus for the hiring process. Plaintiff asked about obtaining

accommodations for her disability. Defendant provided Plaintiff with an Associate Request for Accommodation Form.

14.   Plaintiff completed the Associate Request for Accommodation Form on or about July 8, 2022. Plaintiff explained her impairment as follows: "(1) Unable to hear without 2 hearing aids. (2) With hearing aids – I can hear a little bit but in need [of] a special equipment (special phone, interpreters, etc.)[.]"

15.   Plaintiff identified the following accommodations that she would need on the Associate Request for Accommodation Form that she completed and submitted on July 8, 2022: "(1) Videophone (with ASL interpreter)[;] (2) Live interpreter for meetings[;] (3) SCOMMS (www.scomm.com);] (4) VRI [Video Remote Interpreting] if needed[; and] (5) Clear mask for communication if needed[.]"

16.   Approximately one week before Plaintiff began her employment, Rose Cacioppo from the Accommodations Department contacted Plaintiff via videophone and email. Ms. Cacioppo explained that she had never worked with a deaf person before. Ms. Cacioppo asked Plaintiff what the accommodations she requested were. Plaintiff explained each accommodation to Ms. Cacioppo and why she needed each accommodation. Ms. Cacioppo repeatedly asked Plaintiff the same questions about the accommodations.

17.   Prior to beginning Plaintiff's employment, Ms. Cacioppo and the IT department installed the Videophone Purple software application of Plaintiff's computer, but without a web camera which Plaintiff would need to communicate via ASL or a strobe light that would notify Plaintiff that someone was calling on the Videophone.

18.   On or about July 25, 2022, Plaintiff began her employment as a Medical Authorization Coordinator.

19. A few days after Plaintiff started her employment, Ms. Cacioppo came to Plaintiff's office to discuss the accommodations she requested. Plaintiff discussed the SCOMMS company, which sells UbiDuo text to speech devices. Ms. Cacioppo did not understand the function of the devices so Plaintiff pulled up the SCOMMS website and pointed to a specific device that would perform multiple functions for Plaintiff's job. The device cost approximately $8,000. Ms. Cacioppo said she would investigate the device.

20. During or about August 2022, Plaintiff and Ms. Cacioppo met two to three times for approximately fifteen minutes each time to discuss Plaintiff's requested accommodations. Plaintiff and Ms. Cacioppo also communicated heavily via email to discuss Plaintiff's requested accommodations. Ms. Cacioppo did not understand the significance of each requested accommodation. Plaintiff recommended to Ms. Cacioppo that she reach out to Marsha Moore, an UbiDuo representative, to explain the purpose of text to speech devices.

21. During this period, Plaintiff's communication with her colleagues and her work productivity suffered because Defendant failed to provide the requested accommodations.

22. During or about early September 2022, Plaintiff complained to Ms. Johnson that Ms. Cacioppo was not providing her with the accommodations that she needed to perform her job duties. Ms. Johnson advised Plaintiff to give Ms. Cacioppo time, as the Accommodations Department was understaffed.

23. On or about September 15, 2022, Tony Grisafo became Plaintiff's supervisor when he took over Ms. Johnson's position when she moved to a different department.

24. Prior to Mr. Grisafo becoming Plaintiff's supervisor, Ms. Johnson notified Plaintiff that she was working with Mr. Grisafo on obtaining Plaintiff's requested accommodations.

25. During this period, Plaintiff's communication with her colleagues and her work productivity continued to suffer because Defendant failed to provide her with the requested accommodations.

26. During or about late September or early October 2022, Defendant provided Plaintiff with a one-sided text to speech device, but it did not serve the purpose to assist with communication with all of her colleagues because Plaintiff worked with more than two people in her Department. A one-sided text to speech device must be passed around to all involved. Having a two-sided to speech device would provide a "voice" equally to all of the people in Plaintiff's Department. Ms. Moore, the SCOMMS representative, recommended the two-sided device for Plaintiff's workplace.

27. From the beginning of Plaintiff's employment, Ms. Thompson helped train Plaintiff. Ms. Thompson had never known or worked with a deaf person. Without Plaintiff's requested accommodations, the communication between Plaintiff and Ms. Thompson suffered. Plaintiff needed Ms. Thompson to slow down when she spoke, and Plaintiff had to repeatedly ask Ms. Thompson to repeat herself. On multiple occasions, Plaintiff had to follow up with Ms. Thompson on how to perform her job duties in heart procedures.

28. Ronda LNU trained Plaintiff on the basics of how to submit the vein procedure, how to enter the referral and how to schedule in Defendant's EPIC system. Ronda LNU knew deaf people and a little ASL and was able to finger spell in order to train Plaintiff.

29. During or about late September 2022, Plaintiff's work became more complicated when nurses began to assign work to her. Ms. Thompson was impatient with Plaintiff's limited ability to communicate without the requested accommodations.

30. Megan Spellacy, Administration Specialist for Mr. Grisafo, saw that Plaintiff was struggling with her work and advised Plaintiff that Ms. Thompson should assist her. When Plaintiff requested assistance, Ms. Thompson simply tuned out Plaintiff. Ms. Thompson was often away from her desk and unavailable to assist Plaintiff.

31. During or about the week of September 26, 2022, Plaintiff went to the Sixth Floor for office supplies. While there, Megan Spellacy, Administration Specialist, Lisa Fallara, Social Worker, and Plaintiff had a conversation about her problems with Ms. Thompson not training her properly and Ms. Cacioppo not obtaining the necessary accommodations. Plaintiff communicated with Ms. Spellacy and Ms. Fallara by lip reading in addition to use of both hearing aids.

32. Ms. Spellacy advised Plaintiff that she should inform Mr. Grisafo about Ms. Thompson not training Plaintiff properly.

33. Plaintiff questioned whether she should complain to Mr. Grisafo because she was having trouble with Ms. Thompson training her and Ms. Cacioppo providing Plaintiff's requested accommodations.

34. Ms. Fallara recommended that Plaintiff contact Jamie Parman, an Accommodations Case Manager, to obtain Plaintiff's accommodations because she was more skilled at providing accommodations than Ms. Cacioppo.

35. On or about September 28, 2022, Plaintiff contacted Mr. Grisafo to complain about Ms. Thompson not being available to train her and not properly training her when she was available.

7

36. On or about September 29, 2022, Plaintiff emailed Ms. Cacioppo about getting an UbiDuo device. Despite having multiple communications about the purpose of the device, Ms. Cacioppo questioned Plaintiff's need for the device, as well as the function of the device.

37. Because Ms. Cacioppo never provided Plaintiff with ASL interpreters for meetings or trainings, Plaintiff recommended scheduling interpreters outside the OhioHealth system for a meeting, but the interpreters were not used or scheduled.

38. Ms. Cacioppo notified Plaintiff that she must use OhioHealth ASL interpreters. Ms. Cacioppo stated that it was Plaintiff or her manager's responsibility to schedule the interpreters.

39. On or about October 12, 2022, Plaintiff had her three-month new hire check-in with Ms. Johnson and Mr. Grisafo. Plaintiff complained that Ms. Thompson was not training her properly and that she did not have the accommodations necessary to do her job.

40. On or about October 12, 2022, Plaintiff contacted Ms. Cacioppo and Mr. Grisafo to notify them that she obtained a UbiDuo device, but that the device was a one-sided text-to-speech device, which was unable to assist with communication with all of Plaintiff's colleagues. When Plaintiff discussed obtaining the UbiDuo device with Ms. Cacioppo, Plaintiff again explained that she needed the two-sided text-to-speech for proper communication.

41. During or about the last week of October 2022, Plaintiff contacted Ms. Moore, a representative from the SCOMMS company, to discuss the one-sided device that Ms. Cacioppo provided. Ms. Moore stated that she had worked with OhioHealth in the past and provided two-sided text-to-speech devices but that when she spoke with Ms. Cacioppo about the UbiDuo device, Ms. Cacioppo was not listening or did not understand and ordered the one-sided text-to-speech device instead of the two-sided text-to-speech device.

8

42. Ms. Moore emailed Plaintiff the invoice the one-sided device that Ms. Cacioppo purchased, which Plaintiff forwarded to Ms. Cacioppo. Plaintiff attempted to explain the difference between the two devices. Ms. Cacioppo replied that she preferred to communicate with Ms. Moore directly, leaving Plaintiff more frustrated regarding Ms. Cacioppo's continued inability to understand Plaintiff's accommodation needs.

43. After Plaintiff received the one-sided text-to-speech device, one of her coworkers questioned why she needed the device. Plaintiff explained why she needed the accommodation. The coworker, however, refused to use the device, saying that Plaintiff did not need it, nor was there any point in having it.

44. During or about October 2022, four months after requesting the accommodation, Defendant provided Plaintiff with clear masks so she was able to read lips. Some of Plaintiff's coworkers refused to wear the clear masks.

45. During Plaintiff's employment, she could not hear announcements regarding fires, outages, tornado warnings, etc. Ronda LNU would notify Plaintiff if there was an announcement, but her other coworkers would not notify her. Plaintiff attempted to address this issue with Ms. Buehler, but Ms. Buehler never developed a solution.

46. On or about October 22, 2022, Plaintiff, Mr. Grisafo, Ms. Buehler and Ms. Thompson had a meeting about Pre-Certification. There were no ASL interpreters and no one used the UbiDuo device that Plaintiff brought to the meeting. Plaintiff attempted to learn what Plaintiff needed by reading lips.

47. Plaintiff often felt excluded. When Plaintiff attempted to engage with her coworkers, they would often tell her, "Oh, it's not important," or "You don't need to know." If Plaintiff's coworkers did repeat what they said, Plaintiff still had a difficult time following the

conversation even though she shared that she was deaf and educated them on how to speak with her, *i.e.*, speaking directly at her and clearly.

48. Mr. Grisafo provided Plaintiff with a Rover, which is an iPhone programmed with limited access for security chat/pager and has a vibration function that is deaf-friendly. The Rover did not help because it did not have access to EPIC or chat functions. In the Precertification position is an entry-level role that does not have access to EPIC. Access to EPIC is reserved for upper management or limited clinical staff. OhioHealth provided Plaintiff with a pager that would vibrate to get her attention.

49. Due to the limited accommodations provided, Plaintiff continued to struggle communicating with her coworkers.

50. During or about December 2022, Plaintiff applied for another position within OhioHealth given her problems communicating and working with Ms. Thompson.

51. Mr. Grisafo was notified about Plaintiff applying for the position. Mr. Grisafo asked Plaintiff to meet with him in his office. There were no ASL interpreters during the meeting. Plaintiff read lips as best she could to communicate with Mr. Grisafo. Plaintiff complained about Ms. Thompson not assisting her. Plaintiff explained that she wanted to work in administration eventually. Mr. Grisafo indicated that he would assist her with networking.

52. Plaintiff complained on multiple occasions to Mr. Grisafo that Ms. Thompson was not training her properly and was routinely absent from her desk when Plaintiff needed assistance. Mr. Grisafo repeatedly advised Plaintiff that Ms. Thompson was supposed to train her without rectifying her failure to train Plaintiff.

53. Finally, during or about January 2023, Mr. Grisafo connected Plaintiff with Erin Gregory, an associate that works in a Precertification role in a different department to assist Plaintiff with training in her job duties.

54. On or about January 12, 2023, Mr. Grisafo met with Plaintiff, Ms. Thompson, and the schedulers. There were no ASL interpreters or Marti. The UbiDuo device was available, but no one used it.

55. On or about January 17, 2023, Plaintiff met with Erin Gregory, Medical Authorization Coordinator of Interventional Radiology, to discuss Plaintiff's work. After viewing how Plaintiff's coworkers treated her, Ms. Gregory expressed that Plaintiff's work situation was a "hot mess" and Plaintiff needed to work from home to get out of the hostile work environment. Ms. Gregory advised Plaintiff that she would assist her to work from home.

56. On or about January 20, 2023, Anne Lozano, Registered Nurse, sent Plaintiff a secure chat message asking her if she could help do a "medical necessity" for a Care Coordinator who had called Ms. Lozano and needed some information. Plaintiff informed Ms. Lozano that she would take the call with the Care Coordinator and see what she could do. The Care Coordinator started talking about a patient who needed a "compression hose." Plaintiff did not understand what the Care Coordinator needed from her, so Plaintiff asked the Care Coordinator if she needed preauthorization or records. The Care Coordinator advised Plaintiff that she had specific medical documentation that needed to be completed. Because Plaintiff could not determine what the Care Coordinator needed, she emailed Ms. Thompson for clarification. Ms. Thompson did not respond to Plaintiff's email and, instead, forwarded Plaintiff's email to Ms. Lozano even though Ms. Thompson was the person assigned to train Plaintiff.

57. On or about January 23, 2023, Plaintiff chatted with Ms. Gregory on MS TEAM chat. Ms. Gregory trained Plaintiff by showing Plaintiff new tools on the shared work screen. Ms. Gregory confirmed that Plaintiff was doing her job correctly on incidents where Mr. Grisafo and Ms. Thompson undermined Plaintiff's ability to perform her job duties.

58. On or about January 30, 2023, Plaintiff met with Ms. Gregory, Mr. Grisafo, Ms. Thompson, and Tammy Garwick, who is Ms. Gregory's supervisor, for training on precertification roles. Ms. Gregory provided all of her workflow examples to benefit Plaintiff and Ms. Thompson. There was no ASL interpreter for the meeting or a Marti present. Ms. Gregory attempted to help Plaintiff understand what was being said in the meeting by looking at her, speaking slowly, and repeating herself when, as well as writing notes so Plaintiff could read what was being said. Ms. Gregory explained to Mr. Grisafo that some of the work given to Plaintiff should be done by clinical staff, not Plaintiff. Ms. Gregory suggested to Mr. Grisafo that he needed to hire someone clinical to do the precertification for medicine.

59. On or about February 1, 2023, Mr. Grisafo messaged Plaintiff to ask if she knew that Ms. Thompson would be taking time off on February 17, 2023. Plaintiff informed Mr. Grisafo that she never knew when Ms. Thompson was scheduled for time off work. Plaintiff also explained that she never knew when the schedulers were off work. Mr. Grisafo notified Plaintiff that there was a calendar on the wall that had the schedulers time off, but not Ms. Thompson's time off. Not knowing when Ms. Thompson had time off made it difficult for Plaintiff to have consistency in the workflow in the office.

60. On or about Friday, February 11, 2023, Plaintiff left her desk for a quick break to use the restroom. Mr. Grisafo texted Plaintiff via personal iPhone while she was away from her desk stating that Cassie Simpson, Registered Nurse Coordinator, was trying to contact

12

Plaintiff for an urgent request via pager and Plaintiff failed to respond. When Plaintiff returned to the office, Cathy LNU angrily stated that people on the Sixth Floor called her to get in touch with Plaintiff about the urgent request. Cathy LNU rolled her eyes at Plaintiff and walked away. Plaintiff examined her pager and realized it was not working. Plaintiff texted and informed Mr. Grisafo, who then contacted Information Technology about the pager not working.

61. On or about Monday, February 14, 2023, Plaintiff informed the coworkers in her office that her pager was not working. Plaintiff learned that her pager was beeping all day on Friday, February 11, 2023, but Plaintiff's coworkers in her office never advised her that it was beeping.

62. On or about February 15, 2023, Plaintiff created a poster to remind her coworkers how to get her attention. Plaintiff explained that ASL was her first language. Mr. Grisafo was surprised to learn that ASL was her first language, even though Plaintiff had requested accommodations, including interpreters on multiple occasions.

63. On or about February 15, 2023, Mr. Grisafo indicated that Plaintiff would be performing A-Fib urgent requests on March 3, 2023.

64. On or about February 17, 2023, the A-Fib Team contacted Plaintiff for an urgent request. Plaintiff messaged Mr. Grisafo stating that she understood that she would take over A-Fib urgent requests on March 3, 2023. Mr. Grisafo stated that Ms. Thompson had taken the day off and provided Plaintiff with a checklist to follow A-Fib workflow. Ms. Thompson never provided Plaintiff with the document.

13

65. During or about February 15-17, 2023, Mr. Grisafo advised Plaintiff to contact Advocacy Associates for accommodations after Plaintiff again informed him of Ms. Cacioppo's continued failure to provide the requested accommodations.

66. Plaintiff then remembered that Ms. Fallara advised Plaintiff to ask Jamie Parman, Accommodation Case Manager, to assist her with her accommodations. Plaintiff spoke with Ms. Parman about taking over her case, explaining everything that happened to date. Ms. Parman said she would need to speak with her manager about taking over Plaintiff's request for accommodations.

67. On or about February 22, 2023, Mr. Grisafo messaged Plaintiff and Ms. Thompson for a request from the Preserve Team on an out-of-network request. Ms. Thompson was away from her desk. The accommodations provided to communicate with her coworkers did not work but her coworkers had become dismissive and/or angry at Plaintiff's requests for assistance.

68. Plaintiff left a voicemail with the insurance company and began researching the issue on the insurance company's portal, but the portal was down. Plaintiff notified Mr. Grisafo that she left a voicemail and that the portal was down.

69. Mr. Grifaso questioned Plaintiff about Ms. Thompson. Plaintiff advised that Ms. Thompson was away from her desk. Plaintiff still had not determined the answer when Ms. Thompson returned to her desk more than an hour after Mr. Grisafo initially contacted Plaintiff and Ms. Thompson for an answer.

70. When Plaintiff notified Mr. Grisafo that Ms. Thompson had returned, he advised Plaintiff to request assistance from Ms. Thompson. Plaintiff stated that she would ask Ms. Thompson in writing to request assistance. Mr. Grisafo advised Plaintiff to speak with Ms.

Thompson directly since they were in the same room, but Ms. Thompson is usually abrupt with Plaintiff. Since Plaintiff is unable to effectively communicate verbally with Ms. Thompson, Plaintiff asked Ms. Thompson for assistance in writing.

71. On or about February 24, 2023, Ms. Thompson mentioned that Plaintiff did not have access to estimate the cost for the vein prices, and Plaintiff was unsure whether Ms. Thompson had access to estimate the cost for the vein prices either. Plaintiff inquired but was unable to find the estimate. While Plaintiff was inquiring about it, Ms. Thompson came up behind Plaintiff without her knowledge and read Plaintiff's computer screen. Ms. Thompson informed Plaintiff that she did not have access to estimate the cost for the vein prices.

72. On or about February 28, 2023, Plaintiff met with Ms. Parman for the first time about her requested accommodations. Plaintiff explained all of the problems she was having communicating with Ms. Thompson. Ms. Parman stated that Plaintiff needed to have two mirrors so that she could see who was behind her.

73. On or about March 3, 2023, Plaintiff met with Mr. Grisafo and Ms. Thompson to discuss the ongoing communication issues with Plaintiff and Ms. Thompson, as well as Ms. Thompson failing to properly train and assist Plaintiff. A Marti interpreter was present, but it only lasted for approximately ten minutes before it disconnected. Nothing was resolved in the meeting. Plaintiff communicated her frustrations with Ms. Parman.

74. During or about the week of March 5, 2023, someone placed a medicine request on Plaintiff's desk. Plaintiff attempted to hand the request to Ms. Thompson because medicine was Ms. Thompson's task, not Plaintiff's. Ms. Thompson became angry with Plaintiff, saying that it was her job to do medicine requests. Plaintiff reported the incident to Mr.

15

Grisafo, but he ordered Plaintiff to do the medicine requests even though it was not her job and instructed Plaintiff to ask Ms. Thompson for assistance as needed.

75. On or about March 15, 2023, Cathy LNU spoke with Mr. Grisafo about a medicine request, asking whether the job should be sent to Plaintiff or Ms. Thompson. Mr. Grisafo asked Plaintiff if she would perform the medicine requests. Feeling as if she had no choice, Plaintiff accepted the medicine requests.

76. On or about March 17, 2023, Mr. Grisafo asked Plaintiff to meet in his office. There were no ASL interpreters or other devices to assist Plaintiff with communication. Plaintiff had her hearing aids but attempted to understand Mr. Grisafo by reading his lips. Plaintiff had difficulty understanding Mr. Grisafo's questions. Mr. Grisafo questioned Plaintiff whether she watched religious videos. Plaintiff admitted to watching religious videos on her breaks with closed captioning. Then Mr. Grisafo asked Plaintiff if she had a problem with Ms. Thompson being gay. Plaintiff denied having a problem with Ms. Thompson being gay and questioned who would make the accusation. Mr. Grisafo never informed Plaintiff who made the accusation.

77. On or about March 24, 2023, Plaintiff was scheduled for a meeting with Ms. Parman and Mr. Grisafo to discuss the ongoing issues with Ms. Thompson, as well as the failure to provide Plaintiff's requested accommodations. Prior to the meeting, Plaintiff met with Ms. Parman to update her. During the meeting with Ms. Parman, Plaintiff used her hearing aids and Ms. Parman spoke directly at Plaintiff so Plaintiff could understand her by reading her lips. Plaintiff informed Ms. Parman that Mr. Grisafo questioned Plaintiff about whether Plaintiff had an issue with Ms. Thompson's sexual orientation. Plaintiff stated to Ms. Parman that if things did not improve, she would file a complaint with HR. Ms. Parman

16

asked Plaintiff to give the Department a chance to learn about Plaintiff's Deafness and needs.

78. When Plaintiff met with Ms. Parman and Mr. Grisafo, Ms. Parman allowed Plaintiff to read her lips to communicate, as well as use the UbiDuo to communicate with Plaintiff. Ms. Parman informed Mr. Grisafo that the accommodations needed to become normalized within the Department. Ms. Parman also informed Mr. Grisafo that Plaintiff needed to feel a sense of belonging in the Department because the coworkers in the office excluded her.

79. Ms. Parman asked Mr. Grisafo if there were any performance issues that Plaintiff needed to work on. Mr. Grisafo said that Plaintiff was doing a good job. Ms. Parman provided Mr. Grisafo with two mirrors as an accommodation for Plaintiff to assist her with knowing when people were behind her. When Mr. Grisafo went to Plaintiff's office to install the mirrors, he received push back from Plaintiff's coworkers.

80. On or about March 27, 2023, Plaintiff emailed Ms. Parman to discuss her needs for accommodations after the March 24, 2023 meeting.

81. On or about April 21, 2023, Plaintiff contacted Diversity and Inclusion to request to be part of any Deaf organization within Defendant to bring awareness at OhioHealth and her department, but there was no such organization. There was an organization for people with disabilities named Disability Awareness Wellness Network ("DAWN"). Plaintiff contacted Megan Roa to create Deaf History Month, which included etiquette on how to interact with deaf people in the workplace. Plaintiff forwarded the email on etiquette to her coworkers.

82. On or about May 11, 2023, Mr. Grisafo emailed all of the Structural and Heart Disease Team to have a meeting on May 24, 2023 with Plaintiff and Ms. Thompson to discuss

precertification roles. Despite Plaintiff's request for an ASL interpreter at the meeting, there was no interpreter and the meeting was not rescheduled.

83. On or about May 19, 2023, Plaintiff left the office to work remotely after emailing Mr. Grisafo for authorization. Plaintiff and Mr. Grisafo agreed that Plaintiff would work remotely from home and be in the office one day per week.

84. From or about May 22 and May 23, 2023, Plaintiff requested accommodations from Ms. Parman. Ms. Parman asked multiple questions to clarify Plaintiff's accommodation needs, which Plaintiff answered.

85. On or about May 24, 2023, Mr. Grisafo emailed Plaintiff via EPIC In-Basket, which is OhioHealth's secure email system, about a vein bill that was not covered by insurance. Ms. Gregory assisted Plaintiff with responding to Mr. Grisafo, stating that it was the Billing department's responsibility to submit the appeal about non-payment to insurance. Mr. Grisafo asked Ms. Thompson for assistance on the email, but Ms. Thompson never responded to the EPIC In Basket email.

86. On or about May 23, 2023, Plaintiff had a meeting with Mr. Grisafo, Ms. Thompson, and the Structural and Heart Disease Team. The Structural and Heart Disease Team wanted Plaintiff to follow the same processes and procedures as the previous precertification employee in Plaintiff's role. Ignoring Ms. Thompson's ongoing miscommunication failure to properly train Plaintiff, the Team questioned why Plaintiff did not seek Ms. Thompson's assistance to fulfill Plaintiff's duties.

87. On or about May 24, 2023, Plaintiff emailed Mr. Grisafo about the procedures discussed in the meeting on or about May 25, 2023. Plaintiff asked Mr. Grisafo to help her understand all of the processes and procedures discussed at the meeting.

88. On or about May 30, 2023, Plaintiff emailed vein benefits information to Mr. Grisafo to approve her processes and procedures. Mr. Grisafo approved the processes and procedures so Plaintiff continued to use those processes and procedures.

89. On or about June 7, 2023, Plaintiff notified the Wound Team that a request was Precertification Not Required ("PCNR"). Plaintiff always used "PCNR" when she received the outcome from the payer. Nancy Buehler, Nurse Manager, asked Plaintiff to call and check the authorization from the insurance company.

90. On or about June 12, 2023, Mr. Grisafo emailed Plaintiff that a patient received a large bill for a vein procedure when it was PCNR.

91. On or about June 15, 2023, Mr. Grisafo confused Plaintiff when he asked her about PCNR between vein and diagnostic testing for vein.

92. On or about June 23, 2023, Mr. Grisafo contacted Plaintiff to see if she could take over doing medicine requests because of Ms. Thompson's family emergency. Plaintiff accepted the responsibility because she was scheduled to take over medicine requests on July 7, 2023. Plaintiff requested additional training on medicine requests from Mr. Grisafo. Mr. Grisafo confirmed that Tara Schreck, Pharmacist Technician, would train Plaintiff.

93. On or about June 26, 2023, Plaintiff contacted HR, Jackie Poindexter, Human Resource Associate Advocator, and expressed concerns about conflicting directions from Ms. Gregory and Mr. Grisafo. Ms. Poindexter advised Plaintiff to follow Mr. Grisafo's instructions.

94. On or about July 7, 2023, Plaintiff worked remotely from Florida for two days while away on vacation. Plaintiff took over medicine requests on this day. Mr. Grisafo emailed Plaintiff instructions on medicine requests, but Plaintiff had previously requested that Ms. Schreck

19

train her in person so she would understand the processes and procedures for the medicine requests. When Plaintiff inquired about training, Mr. Grisafo ordered Plaintiff to ask Ms. Schreck questions when she had any.

95.  On or about July 13, 2023, when Plaintiff returned from vacation, Ms. Gregory informed Plaintiff that she spoke with Kim Kinney, Director of Operations for Heart & Vascular, Neuroscience, and Oncology, who is Mr. Grisafo's supervisor, about Plaintiff's situation.

96.  On or about July 17, 2023, Plaintiff emailed Ms. Kinney about meeting to discuss her employment. Ms. Kinney advised Plaintiff that she would only meet with Plaintiff with Mr. Grisafo.

97.  On or about July 18, 2023, Plaintiff asked Mr. Grisafo to meet on MS Teams to discuss the conflicting directions she was receiving on how to perform her job duties, as well as her other concerns. Plaintiff informed Mr. Grisafo that Ms. Gregory had concerns about Plaintiff's employment and that Plaintiff was set up to fail. Mr. Grisafo advised Plaintiff that she was confused because Ms. Gregory and Ms. Thompson were giving her conflicting directions. Mr. Grisafo advised Plaintiff to follow Ms. Thompson's instructions. Plaintiff reminded Mr. Grisafo of the continuing problems with communication and access to Ms. Thompson.

98.  On or about July 20, 2023, Mr. Grisafo met with Plaintiff to discuss another issue regarding vein procedures for two patients with Medical Mutual of Ohio ("MMO") insurance. There was no ASL interpreter for this meeting. Mr. Grisafo placed Plaintiff on a Corrective Action Plan. Mr. Grisafo advised that his boss, Kimberly Kinney, ordered him to put Plaintiff on a corrective action plan.

99. On or about July 24, 2023, Plaintiff received a work assignment that she had never performed before and was unrelated to any work that she had previously performed. Plaintiff forwarded the work assignment to Mr. Grisafo and Ms. Thompson asking for assistance. Mr. Grisafo advised Plaintiff to contact Ms. Thompson, but she was off work that day.

100. On or about July 26, 2023, Plaintiff met with Mr. Grisafo to discuss her work without an interpreter. Plaintiff brought the UBIDUO and a notepad to communicate with Ms. Grisafo, but he refused to use either during the meeting, leaving Plaintiff to try to lip read to understand what was being said. Mr. Grisafo again advised Plaintiff to ask Ms. Thompson questions as needed despite his knowledge of Mr. Thompson's communication and absence issues.

101. On or about August 18, 2023 and August 22, 2023, a patient did not receive authorization for a medicine from Medicaid. Mr. Grisafo disciplined Plaintiff on or about August 29, 2023 for the failure to obtain authorization even though Plaintiff followed all of the procedures.

102. On or about August 31, 2023, Plaintiff repeatedly advised Mr. Grisafo and Ms. Buechler about showing her the steps for vein procedures and informed him that she was not a clinical person so she could not make decisions regarding the vein procedures. Plaintiff also requested assistance from Ms. Thompson, who provided a vague, nonresponsive answer.

103. On or about September 8, 2023, Plaintiff applied for a position with Hepatology Department, but Mr. Grisafo denied Plaintiff the opportunity to apply even though her 45-day discipline had expired.

104. On or about September 14, 2023, Mr. Grisafo emailed Plaintiff about meeting to touch base. Plaintiff requested an ASL interpreter for the meeting.

105. On or about September 15, 2023, Mr. Grisafo presented Plaintiff with her termination notice for the incident on August 18, 2023 and August 22, 2023. Mr. Grisafo said precertification is not the right fit for Plaintiff and indicated that he spoke with HR and it was approved for Plaintiff to seek alternate employment for sixty (60) days. Plaintiff questioned why Mr. Grisafo denied her application to the Hepatology Department, but he said he did not know. Mr. Grisafo advised Plaintiff to reapply for the Hepatology Department position and he would approve it. An ASL interpreter was present for the termination meeting.

106. On or about September 29, 2023, Plaintiff had a performance evaluation with an ASL interpreter. With an ASL interpreter finally available, Plaintiff asked Mr. Grisafo to clarify the vein procedure. Mr. Grisafo advised Plaintiff that she needed to make the determination of whether a procedure was medically necessary. It was only after having the ASL interpreter explain the job requirements that Plaintiff understood her job, but it was too late because she had been terminated.

107. Plaintiff's last day of work was on or about November 15, 2023.

108. Prior to her last day of work, Plaintiff continued to have problems communicating and working with Mr. Grisafo and Ms. Thompson.

109. Defendant's failure to provide an accommodation or an accommodation that worked properly are the cause of any alleged performance issues.

110. Defendant's dismissive attitude to Plaintiff's requests for an accommodation and/or a working accommodation are the cause of any alleged performance issues.

111. Due to Defendant's failure to provide an accommodation or an accommodation that worked properly, Defendant's requirement that Plaintiff's coworkers train her and serve as a resource for Plaintiff only created frustration and hostility within the department toward Plaintiff. As a result, Plaintiff's coworkers avoided and excluded Plaintiff thereby isolating Plaintiff within the department.

112. Plaintiff dual filed a Charge of Discrimination with the Ohio Civil Rights Commission ("OCRC") and the Equal Employment Opportunity Commission ("EEOC"), Charge No. COLB1(002932)110022023/22A-2024-02294, on November 2, 2023.

113. Plaintiff received a Notice of Right to Sue from the OCRC dated October 3, 2024, attached hereto as Exhibit 1.

114. Plaintiff received a Notice of Rights from the EEOC dated December 13, 2024, attached hereto as Exhibit 2.

### COUNT I: AMERICANS WITH DISABILTIES ACT, FAILURE TO ACCOMMODATE 42 U.S.C. § 12101, *et seq.*

115. Plaintiff realleges the foregoing paragraphs as if fully rewritten herein.

116. Plaintiff has a disability within the meaning of the ADA because she is deaf.

117. Plaintiff was qualified for her job with appropriate and properly functioning accommodations, including, but not limited to, the accommodations requested on July 8, 2022.

118. Defendant knew about Plaintiff's disability because it is blatantly obvious that Plaintiff was Deaf. Further, Plaintiff advised Defendant and her supervisors that she was Deaf and completed an accommodation form to obtain accommodations in order to perform her job.

119. Plaintiff requested the following accommodations on July 8, 2022: "(1) Videophone (with ASL interpreter)[;] (2) Live interpreter for meetings[;] (3) SCOMMS (www.scomm.com);]

(4) VRI [Video Remote Interpreting] if needed[; and] (5) Clear mask for communication if needed[.]" Plaintiff repeatedly requested these and other accommodations throughout her tenure with Defendant.

120. Despite multiple requests for accommodations, Defendant failed to provide Plaintiff with her requested accommodations. Though Defendant provided what it considered an accommodation, none of those accommodations worked and only hindered Plaintiff's ability to properly perform her job and communication with her coworkers.

121. Defendant finally provided an ASL interpreter, a proper accommodation, but only for the meeting to terminate Plaintiff's employment.

122. Based on the foregoing, Defendant failed to accommodate Plaintiff's disability in violation of the ADA, 42 U.S.C. § 12112(b)(5)(A).

## COUNT II: OHIO REVISED CODE, FAILURE TO ACCOMMODATE
### R.C. Chapter 4112

123. Plaintiff realleges the foregoing paragraphs as if fully rewritten herein.

124. Plaintiff has a disability within the meaning of the ADA because she is deaf.

125. Plaintiff was qualified for her job with accommodations, including, but not limited to, accommodations requested on July 8, 2022.

126. Defendant knew about Plaintiff's disability because she told them she noted she was Deaf on her accommodation form and her disability was obvious.

127. Plaintiff requested the following accommodations on July 8, 2022: "(1) Videophone (with ASL interpreter)[;] (2) Live interpreter for meetings[;] (3) SCOMMS (www.scomm.com);] (4) VRI [Video Remote Interpreting] if needed[; and] (5) Clear mask for communication if needed[.]" Plaintiff these and other accommodations throughout her tenure with Defendant.

24

128. Despite multiple requests for accommodations, Defendant failed to provide Plaintiff with her requested accommodations. Any alleged performance issues were the result of Defendant's failure to properly accommodate Plaintiff.

129. Based on the foregoing, Defendant failed to accommodate Plaintiff's disability in violation of Ohio's antidiscrimination laws, R.C. 4112.02(A).

## COUNT III: AMERICANS WITH DISABILTIES ACT, DISABILITY DISCRIMINATION
## 42 U.S.C. § 12101, *et seq.*

130. Plaintiff realleges the foregoing paragraphs as if fully rewritten herein.

131. Plaintiff has a disability within the meaning of the ADA because she is deaf.

132. Plaintiff was qualified for her job with accommodations, including, but not limited to, accommodations requested on July 8, 2022.

133. Plaintiff suffered an adverse action when Defendant notified her of her termination on or about September 15, 2023 and then ended her employment on or about November 15, 2023.

134. Defendant knew about Plaintiff's disability because she told them she was Deaf on her accommodation form and her disability was obvious.

135. Similarly situated, non-deaf employees were treated more favorably than Plaintiff and/or Plaintiff was replaced with a non-deaf employee.

136. Any alleged performance issues were the result of Defendant's failure to properly accommodate Plaintiff.

137. Based on the foregoing, Defendant discriminated against Plaintiff because of her disability in violation of the ADA, 42 U.S.C. § 12112(a).

## COUNT IV: OHIO REVISED CODE, DISABILITY DISCRIMINATION
## R.C. Chapter 4112

138. Plaintiff realleges the foregoing paragraphs as if fully rewritten herein.

139. Plaintiff has a disability within the meaning of the ADA because she is deaf.

140. Plaintiff was qualified for her job with accommodations, including, but not limited to, accommodations requested on July 8, 2022.

141. Plaintiff suffered an adverse action when Defendant notified her of her termination on or about September 15, 2023 and then ended her employment on or about November 15, 2023.

142. Any alleged performance issues were the result of Defendant's failure to properly accommodate Plaintiff.

143. Defendant knew about Plaintiff's disability because she told them she was Deaf on her accommodation form and her disability was obvious.

144. Similarly situated, non-deaf employees were treated more favorably than Plaintiff and/or Plaintiff was replaced with a non-deaf employee.

145. Based on the foregoing, Defendant failed to accommodate Plaintiff's disability in violation of Ohio's antidiscrimination laws, R.C. 4112.02(A).

**WHEREFORE**, Plaintiff Jacqueline Hanna prays for Judgment in her favor, back pay, reinstatement or front pay, pain and suffering, compensatory and non-economic damages in excess of $75,000, attorneys' fees, costs, pre- and post-judgment interest, declaratory and injunctive relief, and any other relief to which Plaintiff may be entitled.

Respectfully Submitted,

*s/Laren E. Knoll*
Laren E. Knoll (0070594)
**The Knoll Law Firm, LLC**
7240 Muirfield Drive, Suite 120
Dublin, Ohio 43017
Telephone: (614) 372-8890
Facsimile: (614) 452-4850
Email: lknoll@knolllaw.com
*Trial Attorney for Plaintiff Jacqueline Hanna*

## JURY DEMAND

Plaintiff requests a trial by jury on all issues set forth herein.

s/Laren E. Knoll
Laren E. Knoll (0070594)
**The Knoll Law Firm, LLC**
*Trial Attorney for Plaintiff Jacqueline Hanna*